Covenant Mutual Benefit Ass'n v. Baldwin.

## Covenant Mutual Benefit Association v. Baldwin.

1. *Mutual Benefit Associations — Pleading Statutory Exemptions— Jurisdiction.*—A plea by a mutual benefit association, based upon the theory that the action was not brought in the proper county, must state facts sufficient to show that it is not subject to the provisions of the law, providing that actions against insurance companies wherein an individual is plaintiff, may be brought in the county where the plaintiff resides.

2. *Assessments — Necessity of Payment—Accumulations.*—Where a certificate in a mutual benefit association required the holder to pay a mortuary assessment on the death of each member, and such further assessments as might be made by the directors or managers for expenses and collection costs, within thirty days after notice, and if not received within such time by the company, the certificate was to be null and void, it appeared that the holder of the certificate had paid all assessments, which appeared to have been excessive, resulting in a surplus. *It was held*, that if in making assessments for mortuary purposes, more was required and collected than was authorized by the contract, the excess would stand to the credit of the holder of the certificate. Under such circumstances he might well decline to pay assessments, until the amount thus to his credit was equaled by unpaid assessments.

3. *Mutual Benefit Associations—Certificates Providing a Remedy in Equity—The Remedy at Law.*—Where a certificate in a mutual benefit association provided that the application for membership and the certificate should constitute the complete and only contract between the holder of the certificate and the association, and that no suit or proceeding should be brought upon such contract except in equity, *it was held,* that this clause in the certificate providing for a specific remedy in equity was based upon the theory that an assessment would be necessary and collectible. Where, by the action of the association, the situation was so changed that it would have no right to make an assessment in payment of the certificate sued on, because by reason of a surplus none was necessary, this condition was abrogated, and the beneficiaries were remitted to the appropriate remedy at law.

Memorandum.—Assumpsit on certificate of insurance. Appeal from the Circuit Court of Edgar County; the Hon. FERDINAND BOOKWALTER, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed June 24, 1893.

The statement of the facts is contained in the opinion of the court.

APPELLANT'S BRIEF, W. C. CALKINS AND JOS. E. DYAS, ATTORNEYS.

The decisions are uniform that whenever the purposes of associations come within the terms of Sec. 31 of the Corporation Act, such associations have not been held subject to the laws of this State relating to insurance companies. The Golden Rule v. The People, 114 Ill. 34; The Golden Rule v. The People, 118 Ill. 492; Rockhold v. Canton Ben. Ass'n, 129 Ill. 440. A plea setting up the defendant's right to be sued in his own county is a meritorious plea. Humphrey v. Phillips, 57 Ill. 135. And is not waived by pleading over. Delahay v. Clement, 3 Scam. 201; Weld v. Hubbard, 11 Ill. 573; B. Y. R. R. Pass. Cond. Ass'n v. Robinson, 38 Ill. App. 111.

The powers and duties of the directors of corporations are: To conduct the affairs of the corporation according to their best judgment, in furtherance of the ends of its creation; they are intrusted with the general management of the corporate affairs, and may lawfully do any act within the range of the corporate business which the corporation could do, unless restrained by the charter or by-laws. Boone on Corporations, Sec. 141.

It is undeniably the law that all business relating to the legitimate business of the corporation and authorized by its charter, may be transacted by its directors without the sanction of the stockholders. Wood v. Whelen, 93 Ill. 153, 165; Beach on Corporations, 227; Morawetz on Corporations, Sec. 511. An act of incorporation carries with it all power necessary to accomplish the objects of the act, unless it impairs vested rights. Morris & E. R. R. Co. v. Newark, 10 N. J. Eq. 352.

"Nor is a corporation limited to the exercise of powers specifically granted, but possesses all such powers as are either necessarily incident to those specified or essential to the objects and purposes of its corporate existence." Le Couteulx v. City of Buffalo, 33 N. Y. 333.

A corporation authorized to do any act may do it in any ordinary and proper manner. Coe v. Columbus, etc., Ry.

Co., 10 Ohio St. 372.   It has a reasonable discretion in the selection of any of the means, usual or proper   *   *   *   in view of the circumstances, to accomplish the object of its incorporation.   Clark v. Farrington, 11 Wis. 306.

F. W. Dundas and R. L. McKinlay, attorneys for appellee.
Citing American Digest of 1891, page 2426, Sec. 601; Demmings v. Supreme Lodge, etc., 14 N. Y. Sup. 834; American Digest, 1891, page 2426, Sec. 602; Force v. Supreme Lodge, etc., 41 Mo. App. 106; Shuffler v. Grand Lodge, etc., 47 N. W. Rep. 799; 45 Minn. 256; American Digest for 1890, page 2066, Sec. 648; 28 Mo. App. 463; Bonnert v. Insurance Company, 129 Pa. St. 558.

Opinion of the Court, Wall, J.

This was an action of assumpsit brought in the Circuit Court of Edgar County, upon a certificate of membership issued by defendant below, appellant here, to John H. Baldwin, providing for the payment upon his death of a sum not exceeding $2,500, as a benefit to his wife and children.   The appellant filed the following plea in abatement.

" And the defendant, the Covenant Mutual Benefit Association of Illinois, by John Malick, its attorney in fact, comes and appears herein for the purpose of filing a plea to the writ of summons issued in the above entitled cause, bearing date May 25, 1891, and made returnable herein to said term of court, and the service thereon, and for no other purpose whatever, and defends, etc., and says :   That at and before the time of the issuance of said writ of summons, and at the time of the service thereof, and for ten days prior thereto, and at all times since the commencement of this suit, the above named defendant was and is a corporation organized and doing business under the laws of the State of Illinois, for the sole and only purpose of affording and furnishing life indemnity, financial aid and pecuniary benefits upon the death of a member, to the widow, heirs, relatives, legal representatives, or designated benefi-

ciaries of such deceased members, and further avers that the said defendant association is, and since its organization has been, conducted by a board of managers who were, and are, members thereof elected annually, all residents of Illinois, and further avers that no annual premiums are, or ever were, required by said defendant, either in its by-laws or certificates of membership, or are paid to said defendant by its members as profit, or dividends, or otherwise from defendant association.

The defendant further avers that it had not at the time of the commencement of said suit or the issuance of said writ of summons and service thereof, nor ever had, any capital stock of any description whatever, and further avers that since its said incorporation it has derived its money and funds to pay its mortuary claims or benefits to beneficiaries of deceased members, solely by levying a mortuary call, or assessment, upon the members of said defendant association, and the collection of the same, to which is added the expense of the management, and in which the surviving members are notified of the object for which the money is collected, the names, addresses and amounts of certificates of deceased members, the amount to which the beneficiary is entitled, and has, since its incorporation, namely, January 9, 1877, had its principal office in the city of Galesburg, Knox County, Illinois, and not in said county of Edgar. The defendant further avers that before and at the time of the commencement of said suit of the said Annie Baldwin, and before and at the time of the issuance of said writ of summons and the pretended service thereof upon A. W. Berggren, as its president, that he, the said A. W. Berggren, was, and from thence heretofore has been, and still is a resident of and residing in said county of Knox and State of Illinois, and not in the said county of Edgar, and that he, the said A. W. Berggren, as president of the said defendant association, or otherwise, was not found and served with process in said action in the said county of Edger, but was served with said summons in the said county of Knox. And the defendant further avers that this action is not a local

action, and this the defendant is ready to verify. Wherefore the defendant prays judgment if the court will take further cognizance of the aforesaid action."

A demurrer to this plea was sustained by the Circuit Court. This presents the first question to be disposed of. It is provided by Par. 3, Ch. 110, R. S., that an action against a life or fire insurance company wherein an individual may be plaintiff may be brought in the county where the plaintiff resides, and process may be sent to any county for service. Appellant, by the plea, sought to show that it was exempt from the operation of this provision and that it might claim the benefit of Par. 2 of the Practice Act, which requires generally the suit to be brought in the county where the defendant resides or may be found.

It is provided by Sec. 31, Ch. 32, R. S., relating to corporations not for pecuniary profit, after setting out the mode of becoming incorporated and the powers to be exercised, that " associations and societies which are intended to benefit the widows, orphans, heirs and devisees of deceased members thereof, and members who have received a permanent disability, and where no annual dues or premiums are required, and where the members shall receive no money as profit or otherwise, except for permanent disability, shall not be deemed insurance companies."

Assuming, as we held substantially in N. W. L. A. v. Stout, 32 Ill. App. 31, that an association within this provision is exempt from the operation of Par. 3 of the Practice Act, it will be seen that the plea does not bring the appellant within the exemption.

1st. Associations here designated, can extend benefits to none except widows, orphans, heirs and devisees of deceased members, and members who have received a permanent disability, whereas the plea asserts that this association was organized for the purpose of furnishing life indemnity, financial aid and pecuniary benefits upon the death of a member to the widow, heirs, relatives, legal representatives or designated beneficiaries of such deceased members.

It extends its assistance to relatives, legal representatives

and designated beneficiaries, three classes in addition to those specified in the quoted statute.

·   2d.   Whatever may have been in the mind of the pleader, the plea fails to aver that the members received no money as profit or otherwise except for permanent disability.   That this is an essential feature of associations here referred to was held in Coml. League v. The People, etc., 90 Ill. 166. We will consider this point more fully, hereafter.

We understand, however, from the brief of appellant, that reliance is had upon the provisions of " An act to provide for the organization and management of corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the beneficiaries of deceased members," etc., Session Laws 1887, page 204.

This act is amendatory of an act passed in 1883, and the first section as amended is as follows :

"That corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits upon the death of a member to the widow, heirs, relatives, legal representatives or the designated beneficiaries of such deceased member for the purpose of furnishing accident or permanent disability indemnity to members thereof, and where members shall receive no money as profit, and where the funds for the payment of such benefits shall be secured in whole or in part by assessment upon the surviving members, may be organized subject to the conditions hereinafter provided."

The next section provides the form for the preliminary certificate to be filed with the auditor, showing, among other things, that " bona fide applications have been secured for at least $500,000, by not less than five hundred persons," etc., and that the money required to be advanced is on deposit in some solvent bank ready to be transferred to the corporate treasury.   The next section provides for a certificate of organization to be issued by the auditor, and it further provides that any association organized under the act of 1872, as amended by the act of 1874, i. e., Ch. 32, R. S., first herein referred to, " for the purpose of benefiting widows, orphans,

heirs and devisees of deceased members, may in like manner amend its articles of association in conformity to the provisions of this act.

Other provisions as to the manner of transacting business not important in this connection are contained in sections 4, 5, 6, 7 and 8. Section 9 declares that "All corporations, associations or societies organized under the provisions of this act, or that have heretofore been organized within this State under any charter, compact or agreement, or statute of this State, for the purpose of furnishing life, accident or permanent disability indemnity, or mortuary benefit, on the assessment plan, in accordance with the provisions of the first section of the act, shall not be deemed insurance companies nor subject to the laws of this State relating thereto, but shall comply with and conform to all the requirements and provisions of this act."

Then follow various provisions, requiring reports to be made to the auditor of public accounts, and conferring extensive powers upon him for the purpose of securing the proper conduct of the affairs of such associations, and the protection of those holding certificates of membership therein.

Assuming for the present purpose, that the terms of section 9, above quoted, exempt associations incorporated under the act from the provisions of Par. 3 of the Practice Act, the question is whether the plea brings the appellant within this act. It must appear (says Sec. 9) that the association is organized "for the purpose of furnishing indemnity or mortuary benefit on the assessment plan, in accordance with the provisions of the first section of this act." Turning back to section 1, we find it is a necessary condition that "members shall receive no money as profit."

This condition is fundamental and imperative. It is essentially a characteristic of the associations contemplated in section 1 of this act, as it was of those referred to in Sec 31, Ch. 32, R. S.

While this section 1 permits a wider range of beneficiaries as set out in the plea, it retains the limitation that members shall receive no money as profit.

The object manifestly was, to create a corporation, not for profit, but merely for indemnity and mortuary benefits.

As already stated, the plea contains no averment to this effect. It does aver that the association was organized for the sole purpose of affording indemnity; that no annual premiums are, or ever were, required by the association to be paid to it by its members, as profits or dividends or otherwise; that it has derived its money to pay mortuary claims and benefits, solely by levying mortuary calls, or assessments, and the collection of the same, to which is added the expense of management.

Perhaps it might be argued, that if these facts are true then the association is one not for profit. It is, however, a familiar rule, that pleadings must not be argumentative, but must be direct in their averments. Rule 111, Stephen on Pleading, p. 384. An apt illustration is found in an action of trespass for taking and carrying away the plaintiff's goods, where the defendant pleaded that the plaintiff never had any goods, upon which the court remarked—" this is an infallible argument that the defendant is not guilty, and yet it is no plea." But a closer scrutiny of the plea will create a grave doubt as to the proper argument to be drawn from the language employed.

While it is averred that the association derives its funds solely from mortuary calls, or assessments, it is not averred that these were not in excess of what was necessary to provide the indemnity and mortuary benefits for which the association was organized.

It may be, for all this plea avers, that an excess was levied and collected on these mortuary calls and assessments, and that a great surplus was thereby created, and is now in the corporate treasury, and that members are entitled to their *pro rata* share of this fund, which would be a profit. Whether so or not, the merit of this rule of pleading, as well as the propriety of applying it here, is apparent. The court properly sustained the demurrer to the plea in abatement. The error assigned upon this point will be overruled.

The plea in abatement having been held bad, the general

issue was filed, and a jury being waived, the cause was submitted to the court. The court found for plaintiff and assessed the damages at $2,860. A motion for a new trial was refused and judgment was rendered accordingly, from which the present appeal is prosecuted.

It is urged as error that the court refused the first and third propositions of law presented by appellant.

The motion for new trial presented two grounds: first, that the finding was contrary to the evidence; second, that the finding was contrary to law. No point was made upon the refusal of the court to hold said propositions of law. Having specifically assigned certain reasons in the motion for a new trial it would seem that the appellant can not, in this court, assign other reasons. Hintz v. Graupner, 138 Ill. 158. Hence we might decline to consider these propositions of law, but we are inclined to waive this technical view of the matter, inasmuch as the points raised by the propositions go to the merits of the case.

The first proposition was to the effect that the suit should have been in equity and not at law, and the third asserted that the failure of the deceased to pay mortuary call No. 102 rendered the certificate null and void.

This certificate was issued April 26, 1887, and recited that in consideration of the representations and agreements made in the application for membership and the sum of seven dollars paid as a membership fee, "and of the payment of such further amounts for mortuary assessments, expenses and collection costs as may be required in accordance with the conditions hereafter expressed," the said John H. Baldwin was constituted a member of said association with all the rights and privileges of the same, and that upon his death, he having complied with all the conditions of the certificate, an assessment should be levied upon the other members of the association, and the sum realized, to the amount of $2,500, should be paid as a benefit to his wife and children.

The conditions referred to required the certificate holder to pay a mortuary assessment on the death of each member of the association of $1, or such proportional part thereof as

might be necessary to raise the sum required for the payment of the claim, and to pay in addition such further assessments as might be made by the directors or managers for expenses and collection, costs not exceeding twenty-four cents per month; said mortuary and expense assessments were to be forwarded within thirty days from the date of notice thereof, and if not received within such time by the association the certificate was to be null and void.

It was further provided that the application for membership and the certificate should constitute the complete and only contract between the certificate holder and the association; that no suit or proceedings should be brought upon said contract, except in equity, nor should any action be maintained, except within one year from the death of the certificate holder.

The certificate holder agreed to pay such mortuary assessments as were necessary to meet claims arising upon the death of. other certificate holders, not exceeding one dollar upon each death.

It is shown that the directors of the association adopted a by-law, under which assessments were made in excess of the amount necessary for such purposes, and that a fund was thus accumulated amounting at the time of Baldwin's death to nearly $380,000.

This excess was nearly ten per cent of the assessments. In other words, but little more than ninety per cent of the mortuary assessments paid by Baldwin was applied to the payment of death claims. The residue went to make up the accumulation or reserve fund then in the hands of the association. He paid all the assessments made except the last, No. 102, which was made a short time before his death, and which he neglected, or declined, to pay. The amount overpaid by him on previous assessments was more than the amount of this unpaid assessment, and the question is whether his failure to pay this last assessment should avoid his certificate.

The contract between the parties was contained in the application, and in the certificate, and so long as the assess-

ments were made accordingly, the certificate holder was bound to pay them, and a failure therein would work a forfeiture; but the directors could not, without his consent, change the contract. If they even had the power conferred upon them to pass any by-laws, which is not shown, they could pass none to his injury in contravention of the terms of the contract. And if, in making assessments for mortuary purposes more was required and collected than was authorized by the contract, the excess would stand to his credit. Under such circumstances he might well decline to pay until the amount thus to his credit was equaled by unpaid assessments.

We are of opinion the failure to pay assessment No. 102 did not render the certificate null and void.

The next question is, whether the plaintiffs were bound to proceed in chancery.

Without discussing the point as to how far the jurisdiction of a court and the form of action may be affected by the terms of an agreement between contracting parties, we think it is clear that in this instance the remedy at law was well chosen.

The stipulation that no suit or proceedings should be brought except in equity, in view of what went before, that is, that upon the death of the certificate holder the association should levy a mortuary assessment upon the surviving members, and pay the proceeds, not exceeding $2,500, to the beneficiaries, and for a failure to make such levy, if there was no surplus, and if there was no reason why such a levy could be successfully resisted by the survivors, the remedy is in chancery, was an apt one. But in the present instance the reason, which we have seen justified Baldwin in failing to pay the last assessment made upon him, would have justified those who survived him, in a refusal to pay an assessment on account of his certificate. According to the evidence all had paid the excessive assessments, and the result was an immense surplus.

Had the plaintiffs filed a bill against the association requiring it to make the assessment, no such relief could have

been had for the reason stated. The remedy obviously was
that the association should pay from the funds then on
hand, derived from over-assessments.

This clause in the certificate, providing for a specific rem-
edy in equity, was based upon the theory that an assess-
ment would be necessary and collectible. When, by the
action of the association, the situation was so changed that
it would have no right to make an assessment in payment
of this certificate, because by reason of the surplus none
was necessary, this condition was abrogated, and under
such circumstances the beneficiaries were remitted to the
appropriate proceeding at law. One of the counts of the
declaration set up substantially this state of facts.

No demurrer was interposed thereto, and it may well be
doubted whether the appellant ought to be allowed to raise
the question as to the form of action for the first time in
this court.

It is frequently ruled that where the proceeding is in
chancery, the objection that it should have been at law
can not be presented for the first time in an appellate tri-
bunal.

But waiving this, we are of opinion the error assigned on
this point should be overruled.

It is also urged as error, that the judgment was in favor
of Anna Baldwin alone, when the suit was in behalf of
Anna Baldwin and the children, Nettie, Rush, Rubie and
John, by Charles Lamb, their next friend. The suit was
brought originally in the name of Anna Baldwin alone.
The declaration was so drawn. On the trial the appellant
objected to the introduction of the certificate of member-
ship, because it was payable to the wife and children,
whereas the suit was in the name of the wife only, where-
upon leave was granted to amend the declaration, introduc-
ing the children as co-plaintiffs, and averring their interest
in the subject-matter of the suit, and the trial proceeded.
Proof was made that the persons so named were the chil-
dren of the deceased.

The case was taken under advisement, and at the next

Covenant Mutual Benefit Ass'n v. Baldwin.

term the record shows that "the court being fully advised, does find for the plaintiff, and assesses her damages at $2,860," and the motion for new trial being heard and over-ruled, it was "adjudged that the said plaintiff do have and recover against the defendant, the sum of twenty-eight hundred and sixty dollars, her damages so found and assessed, and also her costs and charges in this suit expended," etc.

No objection was suggested below, by appellant, based upon this point. It appears that in most of the papers filed in the case, even after the amendment was made introducing additional plaintiffs, the cause was styled as though there was but a single plaintiff, to wit, Anna Baldwin. The order of court containing the final judgment, the motion for new trial, the bill of exceptions, and indeed the appeal bond, are all so entitled, and the case is so styled in this court. Manifestly, this is but a clerical error. After the court allowed the amendment of the declaration, the cause was in fact prosecuted by all the plaintiffs therein named, and because the judgment is in favor of the plaintiff —in the singular number—and the personal pronoun "her" is used instead of "their," is no reason for setting aside the finding and judgment of the court.

Had the mistake been observed and the attention of the court called to it, the necessary correction would have been made, as a matter of course.

We are disposed to regard this error as wholly unimportant, and that the judgment should be deemed and treated as a judgment in favor of all the real parties plaintiff; but to save all question as to the identity of the case, and to the end that the judgment may be a certain adjudication of the matter in controversy, the style of the cause will be so amended here as to show the names of all the parties plaintiff, and an order will be entered directing the Circuit Court to make such verbal correction of its records as may be necessary for the same purpose.

We find no substantial error in the record.

The judgment will be affirmed, with special directions as to the amendment of the record. Affirmed.

Opinion by the Court on Rehearing.

A petition for rehearing has been filed, in which it is represented that by mistake, the plea in abatement was imperfectly set out in the transcript, and that the plea contained an averment not appearing in the transcript, as follows:

" And further avers that no member has ever received any money as profit or dividends or otherwise, from defendant association."

The petition is supported in this respect by the affidavit of counsel and the certificate of the circuit clerk, and it is suggested that a rehearing should be allowed to the end that the transcript may be so amended as to show a true copy of the plea. Without discussing the propriety of the action proposed as a matter of practice, we are not inclined to assent to it in this instance for the reason that we are unable to consider the plea good, even though it may aver as alleged.

By the terms of Sec. 31, Ch. 32, R. S., as well as Sec. 1 of the act of 1887, the phrase, " where the members shall receive no money as profit," is descriptive of an essential characteristic of the organizations in view. It was intended by the lawmaker that the rule thus stated should be a part of the settled policy and practice of such organizations, not to be departed from. This plea, with the averment in question, merely declares that " no member ever *has* received any money as profit," etc., but it does not aver that such was the rule and policy of the corporation.

For all that is averred it may be entirely within the scope and power and purpose of the corporation to pay profits in the shape of dividends or otherwise, to the members, whenever the directors may find it convenient and advisable to do so.

Again, a further inspection of the plea shows this corporation was organized January 9, 1877, presumably under the provisions of Ch. 32, R. S., and long before the passage of the act of 1883, which was amended in 1887.

It is not averred that the corporation thus organized availed itself of the provisions of the last named enactment, and it is to be presumed that it did not.

Covenant Mutual Benefit Ass'n v. Baldwin.

Existing presumably under the provisions of Ch. 32, it can not extend its benefits to classes not enumerated in Sec. 31 thereof, and so the plea is obnoxious to the first objection stated in the opinion, heretofore filed.

No other points are urged in the petition and the rehearing will be denied.