## Northwestern Traveling Men's Association v. Harriet L. Crawford.

### Gen. No. 12,461.

1. FRATERNAL BENEFIT SOCIETY—*act of June 27, 1893, construed.* This act so far as it provides for the accumulation and maintenance of a reserve or emergency fund and. payment therefrom of a deficit in a mortuary assessment, does not apply to and become a part of contracts for insurance benefits made prior to its passage.

2. FRATERNAL BENEFIT SOCIETY—*when equity without jurisdiction to enforce claim against.* A court of equity is without jurisdiction to entertain a bill to enforce an alleged balance due from a fraternal benefit society to the beneficiary of a member which consists of the difference between the face of the benefit certificate and the amount accruing from the collection of the assessment made.

3. WORDS AND PHRASES—*" may " when does not mean " shall."* " May " does not mean " shall" and is not so construed in private contracts. It is only in the case of statutes by which public rights are involved that this construction is sometimes adopted *ex debito justitiae.*

4. ACCORD AND SATISFACTION—*what constitutes.* When a party makes an offer of a certain sum to settle a claim when the amount of the same is open and unliquidated, and attaches to his offer a condition that the same, if taken at all, must be taken and received in full satisfaction of the claim in dispute, the party receiving the money takes it with the condition attached to it, and it will operate as an accord and satisfaction.

Bill in equity to enforce benefit certificate. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded with directions. Opinion filed May 7, 1906.

**Statement by the Court.** This is an appeal from a decree of the Superior Court ordering the appellant to pay to the appellee out of a certain fund in its possession the sum of $1,500 with interest and costs.

The decree recites that the appellant, the defendant below, has created and maintained "an emergency fund" in compliance with the requirements of the statute of the state and its own by-laws, to which one John W. Crawford during his life time contributed in like manner and to like extent as other members of the association; that such fund

at the date of the filing of the bill of complaint in the cause amounted to more than $10,000; that said Crawford was a member in good standing at the time of his death, and that after the death of Crawford due proofs of it were accepted by defendant and a mortuary assessment known as No. 705 was duly made upon all surviving members of the defendant and collected; that the full amount collected and received from said assessment was $2,499.90, which was paid over to complainant, the beneficiary named in the certificate of Crawford, leaving a difference between the maximum amount to be paid on said death claim and the amount collected of $1,500.10, which the court finds due the complainant, and finds should be paid out of the "emergency fund."

This decree was rendered on a bill filed by appellee, complainant below, which alleged that the defendant was an organization incorporated in 1876, to provide pecuniary aid to widows, orphans, heirs and devisees of deceased members; that the plan of doing business first adopted empowered the directors to order an assessment of two dollars upon each surviving member on the death of a member, and to pay over to the beneficiary the amount realized if it did not exceed $5,000 for a full rate member; that John W. Crawford was on July 9, 1881, admitted as a full rate member, and complainant designated as his beneficiary; that Crawford continued a member in good standing to his death in October, 1903; that in December, 1899, the defendant amended its by-laws so as to provide an emergency fund and authorized the board of directors to order an assessment upon each member of the association equal to one mortuary assessment, and place the amount so collected in the emergency fund; that the amended by-laws provided that whenever as a result of an assessment to pay a death loss there was collected more than enough to pay it, the excess should go into the emergency fund, and if there was less than enough collected, *such deficiency should be paid from the emergency fund* if the balance in said fund was sufficient for that purpose; that the amended

by-laws also provided that all members admitted prior to January 1, 1890, should be classified as in grade No. 3, and subject to an assessment of two dollars for the purpose aforesaid, and the beneficiaries of such members should receive $4,000 instead of $5,000 in the event of death.

The bill then alleged that at the death of Crawford the defendant had accumulated by these means an emergency fund of $10,000; that $2,499.90 had been remitted to the complainant and represented to be the proceeds of an assessment made by the board of directors upon the members; that complainant had demanded the balance, namely, $1,500.10, but that the association had refused to pay the same, notwithstanding it had a sufficient sum in the emergency fund with which to pay it. The bill then prays for an accounting and the payment of this balance out of the emergency fund and an injunction against depleting the emergency fund to less than $2,000.

To this bill the defendant filed an answer, admitting many of the allegations of said bill, among them, that in December, 1897, in accordance with the provisions of the law of Illinois, the defendant established a fund since designated as an emergency fund, which in October, 1903, amounted to over $10,000, and is now larger, but *denying that the by-laws do now or ever did provide that the difference between the amount collected on the mortuary assessment on the death of a member and the maximum amount to be paid to his beneficiary should be paid from the emergency fund.*

The answer represents further that no beneficiary of any deceased member has ever been paid any sum whatever from the emergency fund by reason of the amount collected from an assessment not producing sufficient to pay the maximum amount to the beneficiary.

It represents that the only amount due to the complainant as beneficiary of John W. Crawford was the amount collected by the defendant on the mortuary assessment at his death, amounting to $2,499.90, and that this amount was paid to her in full and received by her in full on the

express agreement that it was the only amount to be received by her from said death loss.

The answer concludes with the allegation that it appears from the face of the bill that no accounting is necessary, but that if there was or could be any balance whatever due complainant, it would be fixed and certain, and the complainant have a full and adequate remedy at law therefor. Claiming the benefit of demurrer or plea, as well as answer, the defendant asks to be dismissed.

A general replication was filed to this answer. The cause was then heard by the chancellor on these pleadings and an agreed statement of facts. This statement of facts, in addition to what is alleged by the bill and admitted by the answer shows that the defendant is a corporation organized in July, 1876, under an Act of the Legislature approved April 18, 1872; that at the time of the issuance to Crawford of his certificate of membership, the constitution and by-laws of the defendant association provided that a fund should be formed (at the inauguration of the association) by an assessment of two dollars upon each member; that thereafter, upon the death of any member, the directors should pay of the amount thus collected not to exceed five thousand dollars to the beneficiary, and immediately order another assessment of two dollars upon each member, to pay the next death loss.

Also, that the directors might order an assessment of not over one dollar a year upon each member for expenses when needed.

Also, that whenever the amount in the treasury of the association, which might accrue in any manner, should exceed by $2,000 an amount sufficient to pay a death loss, the directors should order the death loss next following paid from said amount in the treasury in place of the usual assessment of two dollars upon each member.

Also, that the constitution might be amended at any annual meeting by a two-thirds vote of the members present.

The statement of facts also shows that in December,

1897, the constitution and by-laws of the association were amended, that as since and now existing they make it the duty of the directors to take general supervision of the business of the association and order assessments to pay death losses, etc.

Also, they provide that the members who are admitted to the association after January 1, 1890, shall be graded in five classes according to their ages from twenty-one to forty-five years, and to pay a death benefit, each member shall be assessed according to his grade and the denomination of his membership certificate and the denomination of the deceased member's certificate, as follows:

| " GRADE. | CERTIF. A. $4,000 | CERTIF. B. $3,000 | CERTIF. C. $2,000 | CERTIF. D. $1,000 |
|---|---|---|---|---|
| First............. | $1.20 | $ .90 | $ .60 | $ .30 |
| Second............ | 1.60 | 1.20 | .80 | .40 |
| Third............. | 2.00 | 1.50 | 1.00 | .50 |
| Fourth............ | 2.40 | 1.80 | 1.20 | .60 |
| Fifth ............ | 2.80 | 2.10 | 1.40 | .70." |

Also, that all members admitted prior to January 1, 1890, shall remain in grade No. 3, and all whole certificates then in force shall be classed certificates A, and all half certificates as certificates C; that all becoming members under thirty-six years shall never be assessed beyond the assessments ordered for grade 3; that those joining between the ages of thirty-six and forty shall be assessed in the fourth grade, and not increased, and those joining between forty and forty-five shall be assessed in the fifth grade, and not increased. Other members in grade No. 1 shall be transferred to No. 2 when they reach twenty-six years of age and to grade No. 3 when they reach thirty-one years.

That upon death of a member, the directors may order an assessment against each member in accordance with the assessed member's grade and denomination of his certificate, *and shall order paid the amount collected upon such mortuary assessment to the person or persons entitled thereto.*

Amount of payment to be made upon any membership certificate not to exceed $4,000, $3,000, $2,000 and $1,000, as determined by the denomination of certificate or certificates in force.

That for the purpose of providing and maintaining an emergency fund the directors may order an assessment when necessary upon each member of the association, each assessment to be equal in amount to one mortuary assessment. The amount so collected shall be placed in the emergency fund. No emergency assessment shall be made during any month when the mortuary assessments of that month exceed four.

Whenever, as the result of an assessment to pay a death loss, more money shall be collected than is required, such excess or surplus shall be transferred to the emergency fund. The treasurer shall keep the fund invested. *No part of it shall be paid out or encroached upon except by an affirmative vote of not less than five directors at a regular meeting of the board of directors, and then only for the payment of death losses, or for the payment of indigent claims.*

*Should the amount collected* (on a mortuary assessment) *be less than the prescribed limit upon any membership certificate, such deficiency may be paid from the emergency fund if there shall be an amount of money remaining in said fund sufficient for that purpose.*

The constitution and by-laws also provide, that the directors may also, at their discretion, order one or more death losses paid by borrowing temporarily from the emergency fund when in their opinion an emergency exists.

In such cases the directors may order a regular mortuary assessment for such loss paid and return to the emergency fund the money so collected. If no regular assessment is thus ordered, the payment from the emergency fund shall be reported to each member.

"Indigent claims" are provided for as follows: "Any member of the association in good standing at the age of sixty years or over, who may be totally incapacitated from performing any kind of labor and have no other means of support, may petition the board of directors. * * *

The board of directors shall then at their discretion order paid to the petitioner a sum not exceeding the total amount paid into the association by the applicant, less ten per cent. thereof, upon the surrender of his membership certificate with a receipt in full of claims against the association. The amount to be paid from the emergency fund, or from a special assessment, as the board of directors may direct."

The stipulated statement of facts also sets forth: That in October, 1903, Crawford died in good standing as a member; that John N. Crawford, his son, acted at all times as the agent of the complainant in the collection of the death loss; that he notified the association of such death; that the directors ordered an assessment on the surviving members under the by-laws, which was numbered 705; that on the first Monday in January, 1904, the directors ordered the treasurer to pay the beneficiary the amount collected on said assessment 705, "*the same to be in full of all claims and demands of the beneficiary on said association by reason of the death of the said John W. Crawford;* that the full amount collected on said mortuary assessment was $2,499.90; that this was $430 less than would have been collected had every member paid; that thereupon a correspondence followed between the secretary and treasurer of the association and John N. Crawford (given at length in the statement of facts), in which Mr. Crawford for complainant at first declined to sign a proposed receipt " for $2,446.70 (being then the full amount collected on assessment No. 705) in full payment of the death loss of John W. Crawford, less any additional amounts which may hereafter be collected on assessment No. 705, the same when collected to be paid to the beneficiary," or " to accept the settlement as submitted without first making a thorough investigation of the true condition of the association."

The secretary and treasurer answered this letter, and in said answer declared that " when the association tenders the full amount collected upon a mortuary assessment in accordance with the by-laws, it has fulfilled its obligations to the letter."

Thereupon lawyers in Omaha, to whom the matter had been referred by the beneficiary and her son, took up the matter by a letter to the association in which they say:

"We note that on December 24, 1903, you had $10,000 in the emergency fund, and $19,055.83 in cash other than the emergency fund. The limitation upon this certificate being $4,000, it has occurred to us that the deficiency should be paid from the emergency fund, and we write you this letter that we may have your interpretation or construction of the provision of section six, above referred to, in cases of this kind."

To this the secretary and treasurer replied that the association issued no certificate or policy on which they promised to pay $4,000; that they simply agreed to pay the amount collected upon a mortuary assessment in accordance with their by-laws; that the laws of the state compelled the association to carry an amount in advance of the actual mortuary assessment, which might be levied, but that to make a preference in Mrs. Crawford's case and exhaust the surplus would be an injustice to others whom the directors might be unable to favor in the same manner.

After this, one of the lawyers so corresponding with the association called at the office of the association and conferred with the secretary concerning the rights of the complainant, and thereafter the complainant executed the receipt sent to her, and Mr. J. N. Crawford for her sent it and the certificate of membership to the secretary, thanking him for the courtesies extended "to their representative," the lawyer aforesaid. The check of $2,446.70 was then immediately forwarded to the complainant, and thereafter in succession checks for $49.10 and $4, making up the full amount collected on assessment 705. These checks were all accepted, indorsed and collected by complainant.

The stipulation further recites that because of the provisions of chapter 73 of the statutes of Illinois, requiring all assessment companies to accumulate and maintain a reserve or emergency fund equal to such sum as might be realized from one assessment, and in no event less than its

maximum policy or certificate, in December 1897 an emergency fund was created and established by said association, to which said John W. Crawford during his life-time contributed, the same as other members of said association. During said period the aggregate amount of said Crawford's contribution to said fund is $8. That under the constitution and by-laws of the association, the board of directors have borrowed temporarily from said fund to pay a death loss, the amount so withdrawn being repaid from a regular mortuary assessment to pay such death loss; that the purpose of such provision relative to borrowing temporarily, is to equalize the number of mortuary assessments levied monthly, so as to prevent a large number of assessments in one month, and a small number of assessments for another month, to meet death losses by reason of the death of members of the association; that in case of the payment of a death loss from said emergency fund by borrowing, as aforesaid, the amount paid such beneficiary or beneficiaries has at all times been determined by the board of directors, by the amount collected from the mortuary assessment levied to pay the death loss of another deceased member, and where the death loss should have been levied and paid concurrently; that no beneficiary of any deceased member has ever been paid any amount or amounts of money whatsoever from this emergency fund on account of any deficiency or failure to collect from a mortuary assessment levied to pay the death loss of some deceased member, the maximum amount or limit provided by the constitution and by-laws of the association, and no suit has ever been instituted by any beneficiary by reason of such deficiency.

DOLPH, BUELL & ABBEY, for appellant.

MILLARD R. POWERS, CARLOS S. HARDY and JOSEPH D. IROSE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.
Three questions are raised by the record in this case.
First. Was there at any time anything due from the

appellant to the appellee in addition to what has been paid her?

Secondly. If there was, did the reception by the complainant of the $2,499.90 paid by the defendant under the circumstances detailed in the prefixed statement, constitute an accord and satisfaction, so that the complainant no longer has a claim for more?

Thirdly. If there is still a claim for a balance outstanding, is this claim enforceable in equity under the bill in this cause?

The appellant answers the first and third questions in the negative, and the second in the affirmative.

The appellee thinks the answer to the first and third should be in the affirmative, and that to the second in the negative.

We have come to the conclusion that the position of the appellant is correct, as to all of the issues involved.

There is in the first place no question but that the literal interpretation of the contract between John W. Crawford and the appellant corporation, unmodified by the statutes of Illinois, is that upon his death while a member in good standing of the association, it will levy an assessment upon all of its surviving members, and pay the amount so collected, not to exceed $4,000, to such person as he may designate as beneficiary; nor is there any question but that upon the death of Crawford the association did levy such an assessment and did pay the beneficiary—the appellee— the entire amount collected from such assessment.

The appellee in effect admits this, but her contention is that the Legislature of Illinois, by an Act approved June 22, 1893, entitled "An Act to Incorporate Companies to do the Business of Life or Accident Insurance on the Assessment Plan, and to Control such Companies of this State and of other States doing Business in this State," etc., read into the contract theretofore made between Crawford and the appellant company at least two new provisions: First, that the company should accumulate and maintain a reserve or emergency fund equal at least to the amount of its

maximum policy outstanding; and second, that if the mortuary assessment levied on Crawford's death should be less than $4,000, and there was in the emergency fund a sufficient balance, the difference between the amount collected and $4,000 should be paid to the beneficiary out of the said fund.

The appellee admits that the appellant corporation did not, by the amendment to its by-laws made in 1897, amend its contract with Crawford so as to make it conform to the provisions of the statute. She says, on the contrary, that the "appellant enacted new by-laws making a provision for the establishment of the emergency fund, in obedience to the law of the State of Illinois, *and attempted to avoid the statute by reserving a discretionary control over the emergency fund so created, by using the word 'may' where the statute clearly required the word 'shall' or its equivalent.*"

But counsel say that the law writes into every contract all statutes that are applicable to the transaction. Undoubtedly this is true of statutes existing at the time that the contract is made. But statutes subsequently passed cannot constitutionally abrogate or impair the obligation of contracts, and certainly no attempt was made in the law of 1893 referred to, to change or add to any contract theretofore made. "Corporations transacting the business of life or accident insurance upon the assessment plan," the Act says, *may* re-incorporate thereunder, but are not required to do so, and any such domestic corporation may continue to exercise all the rights, powers and privileges not inconsistent with this Act, pursuant to its articles of incorporation, the same as if incorporated under the Act.

The Act further provides that every policy or certificate *thereafter issued* "by any corporation doing business under this Act and promising payment to be made upon a contingency of death, * * * shall specify the sum of money which it promises to pay under such contingency, * * * and upon the occurrence of such contingency, the corporation shall be obligated to the beneficiary for such payment at the time and to the amount specified in the policy or certificate."

It is upon this provision entirely that appellee relies, and yet nothing can be plainer than that it does not apply to a "policy or certificate" issued, as was the one in question here, twelve years before the Act passed.

We do not mean, by calling attention to this sufficient reason why the statute in question reads no additional terms into the contract involved here, to imply that except for this limitation to policies thereafter issued, it would certainly apply to complainant's claim. The section quoted, it will be. observed, is applicable only to policies or certificates thereafter issued *by any corporation doing business under the Act of 1893.* Section 7 of the same Act provides expressly that it is corporations organized to insure lives * * * "wherein" (in addition to other requisites) "the insured's liability to contribute to the payment of policy claims accrued or to accrue is not limited to a fixed sum," which shall " be deemed to be engaged in the business of life insurance upon the assessment plan, and shall be subject only to the provisions of this Act."

Appellant claims that as the liability of each of its members to contribute to a death loss is to contribute a fixed and determinate sum, the insured's liability in it " to contribute to the payment of policy claims accrued or to accrue" *is* limited to a fixed sum, and that the law of 1893 does not apply to it at all.

Whether this be so, or whether, because in it the amount of the liability to contribute varies during any fixed period of time, according to the number of deaths, instead of being made definite for such period in accordance with established estimates, as in old line insurance companies, the appellant is to be considered an assessment company, under the law of 1893, is a question we do not decide in this case, because we do not consider that it is before us.

By the stipulation of facts in the record, it would seem that the appellant admitted the necessity of conforming in certain respects, at least, to the law of 1893. But we see no reason for holding that the Act governs in any respect the conceded terms of the contract between Crawford and appellant.

Nor without such effect on the contract, as is claimed by appellee for this statute, can we see any reason for holding that the liability of appellant to her was not completely met by the payment of the $2,499.90, which was collected on mortuary assessment No. 705.

The contract, as made, was one frequently recognized as legal and enforceable, and not unconscionable or unreasonable. Railway Conductors' Ins. Ass'n v. Robinson, 147 Ill. 138; Covenant Mutual Life Ass'n v. Tuttle, 87 Ill. App. 309; Smith v. Covenant Mutual Ben. Ass'n, 24 Fed. Rep. 685; Niblack on Mutual Benefit Societies, Chapter 25 *passim*.

The amended by-laws of 1897 did not impose any obligations upon the directors to take from the emergency fund, or any other fund, the difference between the maximum sum provided for and the amount collected. As we have noted, counsel for appellee charges that the by-laws were framed with intention to avoid this obligation. We think so, too, and that the intention was carried out so far, at least, as concerns certificates or policies existing before the law of 1893. "May" does not mean "shall", and is not so construed in private contracts. It is only in the case of statutes by which public rights are involved that this construction is sometimes adopted *ex debito justitiæ*. Brokaw v. Highway Commissioners, 130 Ill. 482; Rothschild v. New York Life Ins. Co., 97 Ill. App. 547.

The emergency fund had other uses, plainly shown by the by-laws, besides this one, to which it could be put at the discretion of the directors.

It may not be improper, in concluding our discussion of this branch of the case, to say that no surer method of bringing about eventual injustice can be imagined than to deplete the emergency fund for this purpose, for the benefit of those beneficiaries first applying for it, under the theory contended for by appellee. A short time would suffice to wipe out all chance of any benefit from the fund to the others who contributed it.

Our conclusion on this question of the original liability

of the appellant, of course, renders supererogatory a de-
cision of the other questions indicated at the beginning of
this opinion as involved in the cause.   But we will briefly
allude to them.

We regard the law of Illinois as settled, going farther in
this direction than that of many other jurisdictions in favor
of the proposition made in appellant's brief,—that "when
a party makes an offer of a certain sum to settle a claim
when the amount of the sum is open and unliquidated, and
attaches to his offer a condition that the same, if taken at
all, must be taken and received in full satisfaction of the
claim in dispute, the party receiving the money takes it
subject to the condition attached to it, and it will operate
as an accord and satisfaction."

Cases not nearly as strong as the one at bar have illus-
trated this doctrine in Illinois.   Ostrander v. Scott, 161 Ill.
339; Lapp v. Smith, 183 Ill. 179; Bingham v. Browning,
197 Ill. 122; Michigan Leather Co. v. Frazer, 104 Ill. App.
268.

We think the facts concerning the payment of and re-
ceipt for this claim, as set forth in the statement prefixed
hereto, conclusively establish, under the doctrine of these
cases, an accord and satisfaction which bars the present
demand.   This opinion, that such an effect is to be given to
these facts, is strengthened by the language of the fourth
paragraph of section 2, of article V of the constitution of
the appellant, which was a provision under which the ben-
eficiary received the payment in question.

Finally, were there no other difficulty in the way of
affirming this decree, we do not think any proper case was
made for the interposition of chancery.   The plaintiff, had
she any claim, could have secured it as well at law.   Row-
ell v. Cov. Mut. Life Ass'n, 176 Ill. 557.

The very allegations of the bill and the theory on which
the suit is brought, seem to us to show the lack in any
event of any necessity for a suit in equity, and the relief
granted of a money decree and a general execution show
the same.   The defendant should have had the benefit of

the demurrer in effect incorporated in its answer. But in view of the decision to which we have arrived upon the merits of the cause, this is immaterial.

The decree is reversed and the cause remanded with directions to the Superior Court to dissolve the injunction heretofore granted and to dismiss the bill for want of equity.

*Reversed and remanded with instructions.*