Leonard Weill et al., Trading as Goodwill Service Station, Appellees, v. Centralia Service and Oil Company and Earl Swagler, Appellants.

filed October 30, 1943.

HUGH V. MURRAY, JR. and WHAM & WHAM, all of Centralia, for appellants.

JOHN L. KAGY, of Salem, for appellees.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment for $252.86, rendered in the circuit court of Marion county, Illinois, in favor of Leonard Weill, Flora Oakes and Paul S. Gorman, partners, doing business as Goodwill Service Station, plaintiffs appellees (hereinafter referred to as plaintiffs), and against defendants appellants, Centralia Service and Oil Company, a corporation, and Earl Swagler (hereinafter referred to as defendants), and in which said proceeding the court dismissed a counterclaim filed by the defendants herein. We are asked to review not only the action of the court in entering judgment for plaintiffs, but also to review the action of the court in dismissing the counterclaim.

This case was commenced as a suit at law to collect the monthly instalment of rent under a lease. By amendment to the complaint, reformation of the lease was sought and the cause was transferred to the chancery docket and heard as a case in chancery. No complaint is made that the court committed error in reforming the lease, as both plaintiffs and defendants appear satisfied with the action of the court in that regard. The case was tried upon the amended complaint and the answers thereto, and the counterclaim and the answers thereto. The amended complaint was filed by four partners doing business as Goodwill Service Station, and against Centralia Service and Oil Company, and Earl Swagler. It alleges the execution of a lease on June 4, 1937 between the plain-

tiffs and Anne L. Lopez, as lessors, and Earl Swagler, as lessee, covering two gasoline service stations, located in Sandoval and Carlisle. The amended complaint further alleges that pursuant to the provisions of the lease, the sum of $2,500 was deposited by Earl Swagler with plaintiffs; that through a mistake of the scrivenor in reducing the oral agreement of the parties to writing, the actual agreement was not properly expressed, and that the agreement should have provided that upon the default in the payment of instalments of rent for three months the deposit of $2,500 should be forfeited to "lessors," instead of "lessee" as set forth in the written lease.

The amended complaint alleges that Earl Swagler entered into possession of the demised premises and continued in the possession thereof until the month of January 1942; that on December 16, 1941, Earl Swagler, with the consent of plaintiffs, assigned the lease to Centralia Service and Oil Company and at that time, by agreement, the deposit was reduced from $2,500 to $1,741.42; that thereafter, in January 1942, Centralia Service and Oil Company entered into possession of the premises and paid the monthly instalments of rent until April 1, 1942; that the monthly instalment of rent due for the month of April 1942 was not paid. The prayer of the complaint is that the lease be reformed to change the word "lessee" to "lessor" and for judgment for the rent due for April 1942.

The defendant Swagler, by his answer, denied the material allegations of the complaint, and alleged that according to the agreement and terms of the lease, when he or his assigns, failed to pay the rentals as provided therein, for a period of three months, the lessors became entitled to the deposit and the lease thereupon terminated and he and his assigns were relieved from any further obligations thereunder. The defendant Centralia Service and Oil Company filed its answer denying the material allegations of the

amended complaint, and alleging, affirmatively, substantially the same matters of fact as were set forth in the answer of defendant Swagler.

The defendants also filed a counterclaim, alleging that in compliance with the terms of the agreement, Swagler deposited with plaintiffs the sum of $2,500, which was thereafter reduced by agreement to the sum of $1,741.42; that according to the terms of the oral agreement, had at the time the lease was entered into, in the event of a default in the payment of monthly rentals for three successive months, the lease terminated as to both parties, and lessors became entitled to retain the money so deposited. The prayer of the counterclaim is that the agreement be reformed so as to express this intention of the parties, if such reformation is, in fact, necessary. The counterclaim also prayed that it be adjudged and decreed that said lease provides that upon default in the payment of the monthly rental therein prescribed for a period of three successive months, that it should be terminated; that the plaintiffs should retain said sum so deposited with them as their property; and that the defendants should be forever released and discharged of and from any and all obligations undertaken by the lessee in said lease. To the answers and counterclaim plaintiffs filed replies and answers denying the material allegations thereof.

The lease executed on June 4, 1937, which appears in evidence contains, with others, the following provisions: "The party of the second part, as lessee, to secure the payment of said sum of money and to further secure the performance of his agreements hereinabove contained, agrees to deposit with the lessors the sum of $2500.00 in cash, said sum to be held by said lessors until the termination of this lease; said lessors to pay lessee 4% interest annually on said sum, said sum of 4% to be paid semi-annually and to be deducted from the rent paid by lessee to lessors in the months

of December, 1937, and June, 1938, and in similar months in each succeeding year thereafter; it being further agreed between the parties that the said lessee shall, if he fails to make the monthly payments of rent hereinabove provided for, for three successive months, he shall forfeit the said sum of $2500.00 to said lessee and said lease shall terminate.'' The construction of this provision in the lease is decisive of this case.

The evidence produced on the hearing of this cause without question establishes the execution of the lease and its subsequent assignment. There was also introduced in evidence certain conversations that occurred at the time of the execution of the lease, as to what was intended by the provision in said lease now under consideration. Most of the evidence produced in the trial of this cause is uncontradicted, and the allegations in the complaint as to what occurred between the original lessor and lessee after the lease had been executed and up until the time and after its assignment, as such allegations are set forth in the complaint, can fairly be said to have been proven by the evidence produced on the hearing. When the judgment was entered in favor of plaintiffs in this case, more than three months' rent was in arrears. We are squarely confronted with the proposition as to whether or not the provision in the lease, called in question by this appeal, is such a provision as needs interpretation, or whether or not the words employed have a definite and precise meaning and need no interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting

or extending their operation (*Chicago Home for Girls v. Carr*, 300 Ill. 478, 485; *City of Beardstown v. City of Virginia*, 76 Ill. 34, 40; *Rothschild v. New York Life Ins. Co.*, 97 Ill. App. 547, 554).

Our courts have passed upon the meaning of the word "shall" in its common and ordinary meaning, and have held that the word "shall" has always a pre-emptory, imperative, compulsory and mandatory sense, as opposed to a permissive sense, and when employed with reference to a right or benefit to anyone, which right or benefit depends on giving a mandatory meaning to the word, it cannot be given a permissive meaning (*Clark v. Patterson*, 214 Ill. 533, 539; *Northwestern Traveling Men's Ass'n v. Crawford*, 126 Ill. App. 468, 480; *Belleville Savings Bank v. Schrader*, 214 Ill. App. 388, 392).

The word "terminate" employed in connection with a lease, connotes a conclusion and severance of the relationship of landlord and tenant prior to the expiration of the term of the lease by the efflux of time (*Stuart v. Hamilton*, 66 Ill. 253, 255).

The plaintiffs herein contend that the lessee cannot avail himself of his own act to vacate the lease in question and urge that it has been so ruled on the principle that no man should be permitted to take advantage of his own wrong. With this wholesome pronouncement we find ourselves heartily in accord, but in this case it is urged by the defendants herein that the action taken by them in failing to pay the rent for three months brought the contractual relationship, created by the lease, to a termination by the provisions of the lease itself. A fair and candid consideration of the evidence produced is very persuasive in convincing us that the parties to this lease considered and understood, when it was made and executed, that the deposit put up would belong to the lessors if there was a failure on the part of the lessee to pay rent for three months. We are of the opinion that the failure of the lessee, or his assignee in this case, to pay rent

for three months brought about the termination of the lease and that the lessee, and his assignee, has a right to so contend. In construing this lease we must enforce it in accordance with its plain language, regardless of the construction placed upon it by the parties, as construction by the parties is considered only where the language is ambiguous (*Young v. Illinois Athletic Club*, 310 Ill. 75). We do not perceive any ambiguity in this case.

It is our opinion the trial court should not have entered judgment in favor of the plaintiff for $252.86, and that the court also committed error in dismissing the counterclaim. This case is, therefore, reversed and remanded, with directions to enter a decree in favor of counterclaimants, terminating their lease as prayed for in their counterclaim, which relief, we hold, they are entitled to under the law and the evidence in this case.

*Reversed and remanded, with directions.*