**PERFECTION OIL COMPANY, a Corporation, Appellant,**

v.

**Leo SAAM and Continental Oil Company, a Corporation, Appellees.**

**No. 16091.**

United States Court of Appeals
Eighth Circuit.

March 31, 1959.

Rehearing Denied April 28, 1959.

836

Michael A. Stapleton, Dubuque, Iowa, for appellant.

Louis A. Nack, Galena, Ill., for appellee, Leo Saam.

William C. Fuerste, Dubuque, Iowa, for appellee, Continental Oil Co.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by plaintiff, Perfection Oil Company, from final order sustaining defendants' motion for summary judgment and dismissing its complaint for injunctive relief against defendants, Saam and Continental Oil Company which will hereinafter be called Continental. Jurisdiction is established upon the basis of diversity of citizenship and an amount in controversy in excess of $3,000.

Plaintiff in its complaint alleged that it purchased defendant Saam's bulk oil plant at Scales Mound, Illinois, for $8,-910.89, and that in connection therewith plaintiff, on June 30, 1952, entered into a written contract for a five-year period with Saam, leasing the bulk plant to him and employing Saam as its distributor at Scales Mound. The contract provides that Saam is to handle plaintiff's products exclusively, upon terms specified in the contract. Both plaintiff and Saam carried out the provisions of the contract until its expiration in 1957. Thereafter, Saam continued in plaintiff's employment for a time without any definite extension of the contract. In February 1958 Saam advised plaintiff that he was leaving its employment on May 1, 1958, that he intended to erect a bulk oil plant in Scales Mound, and that he had accepted employment with Continental to distribute its products in Scales Mound. Plaintiff prayed that Saam be enjoined from proceeding with the building of the bulk plant and from handling the products of Continental, upon the ground that such conduct was in violation of a restrictive provision of Saam's employment contract with the plaintiff, which provision is hereinafter set out in full.

Plaintiff also sought to restrain Continental from entering into any arrangement with Saam for the distribution of its products at Scales Mound. Since the rights of the plaintiff against Continental are dependent upon the interpretation of Saam's contractual obligations to the plaintiff, the case against Continental requires no consideration unless plaintiff's claims with reference to Saam are established.

This controversy turns upon the interpretation of what the parties and the trial court describe as the restrictive paragraph of the contract which reads:

"It is further agreed by the party of the second part [Saam] that the sale of first party's petroleum products in the trading area hereinbefore referred to, is a valuable asset to the party of the first part and in order to promote the sales of petroleum products in said trading area the party of the first part will make expenditures through advertising and otherwise, and in consideration of the covenants and agreements herein contained the party of the second part agrees that *in the event of the termination of this contract for any reason, with or without cause, that in such event,* the party of the second part covenants and agrees not to engage in the sale of gasoline, fuel oils or petroleum products, directly or indirectly, either on his own account, or as an employee for any other person, firm or corporation, in the town of Scales Mound, Jo Daviess County, Illinois, or within a radius of ten (10) miles from said town of Scales Mound, Illinois, for a period of five (5) years following the *termination* of this contract." (Emphasis ours.)

The trial court upheld defendants' position that the paragraph just quoted was operative only if the contract was terminated prior to the expiration of the five-year term therein provided, and that the restrictive paragraph had no effect if the term ended by efflux of time.

It is established beyond dispute that the lease and employment contract remained in effect for the entire five-year contract period, and that it expired by lapse of time pursuant to its terms. Thus, the ultimate issue in this case is the meaning of the word "termination" as used in the restrictive paragraph.

Plaintiff raises no objection in its brief to the propriety of disposing of this case by summary judgment procedure. The trial court in its unreported memorandum opinion adequately supports its conclusion that the issues in this case can be disposed of by summary judgment, the court stating:

"The claim of the plaintiff for this relief is based upon the provisions of the restrictive paragraph of the agreement heretofore set out. The motion of the defendants for summary judgment is based upon the provisions of the same paragraph. Neither the plaintiff nor the defendant Leo Saam made or makes any claim for reformation. Neither the plaintiff nor the defendant Leo Saam made claim that it or he has any further evidence to offer bearing upon the interpretation of that paragraph. All of the parties stand upon the provisions of the restrictive paragraph viewed in the light of the other provisions of the agreement containing it and the other documents referred to. * * *"

The court in interpreting the word "termination" as used in the restrictive paragraph of the contract states:

"Where the agreement of the parties is in writing their intent has to be found in their expression in the writing. The writing is the exclusive repository of their common intention. In the absence of reformation the parties are bound by the language employed to state the agreement.

"It is assumed that the parties to an agreement ascribe to the terms used by them therein the meaning

ascribed to those terms under the law applicable to their agreement.

"In the present case it seems clear that the applicable law and hence the governing law is that of the State of Illinois.

"The provisions of the restrictive paragraph are applicable 'in the event of the termination of this contract for any reason, with or without cause.'

"Under the Illinois law a distinction is made between the meaning ascribed to the word 'termination' and to the word 'expiration.' Under that law the word 'terminate' does not encompass within its scope the ending of an agreement by the expiration of its fixed term."

Support is found in the Illinois decisions for the statement made by the trial court in the last paragraph of the foregoing quotation. Stuart v. Hamilton, 66 Ill. 253; Weill v. Centralia Service & Oil Co., 320 Ill.App. 397, 51 N.E.2d 345.

Stuart v. Hamilton, supra, interprets an Illinois statute which authorized collection of double rental from a tenant holding over after the expiration of his lease. Plaintiff sought double rental from a tenant who held over after his lease had been forfeited prior to the expiration of the term. The court denied relief, holding that double rental applied only to situations where tenants held over after the expiration of the lease. In the Weill case, supra, the court held that the lease was terminated because of the failure to pay rent. The court in its opinion states (at page 347 of 51 N.E. 2d):

"The word 'terminate,' employed in connection with a lease, connotes a conclusion and severance of the relationship of landlord and tenant prior to the expiration of the term of the lease by the efflux of time. Stuart v. Hamilton, 66 Ill. 253, 255."

Other courts have recognized this distinction between "expiration" and "ter-mination." In Kramer v. Amberg, 15 Daly 205, 4 N.Y.S. 613, the court states:

" * * * the uniform construction of the courts has been that where the statute speaks of the 'expiration of the lease,' the meaning is that the lease has come to an end either by effluxion of time or its own limitation. The ending of the lease by the exercise of the landlord's option, after condition broken, is the termination, not the expiration, of the lease. * * * "

See also: Haberle v. R. F. C., D.C. D.C., 104 F.Supp. 636; Grant v. Aerodraulics Co., 91 Cal.App.2d 68, 204 P.2d 683; F. & M. Drilling Co. v. M. & T. Oil Co., 192 Okl. 372, 137 P.2d 575.

The instruments involved in the cases just cited differ materially in form and purpose from the contract we are considering. We agree with the plaintiff's contention that the word "termination" has no fixed legal meaning and is not a word of art in the law. Nevertheless, the cited cases at least afford substantial support for the trial court's determination that under the applicable Illinois law the word "termination" as used in the restrictive paragraph should be interpreted to mean the cancellation of a contract before the expiration of the term provided for in the contract, and that "termination" and "expiration" are not synonymous words.

We find no fault with plaintiff's authorities, such as Liberty Mutual Ins. Co. v. Hercules Powder Co., 3 Cir., 224 F.2d 293, 54 A.L.R.2d 513, holding that where words have varied meanings dictionaries are of but little help as it is their function to give all the different meanings of words. Dictionary definitions could be selected to support the contention of either of the parties. In Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, Mr. Justice Holmes states:

" * * * A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content

according to the circumstances and the time in which it is used. * * * ”

Plaintiff's argument to the effect that, if the court placed itself in the situation of the parties, the only fair interpretation of the contract that could be made is that contended for by the plaintiff is without merit. It is not unlikely that the plaintiff was interested in obtaining as broad a restraint upon Saam as possible. On the other hand, Saam was interested in bargaining for a narrow restraint. It appears that Saam was in the oil business at Scales Mound before entering into the contract with plaintiff. The various contract agreements show that Saam sold only physical assets, such as buildings, fixtures, and equipment to plaintiff. There is nothing to show that he received an excessive price for his property or that he received anything for good will. Under the restrictive paragraph, as interpreted by the trial court, plaintiff was assured of freedom from competition with Saam for a period of at least five years, either by the contract's complete performance for the five-year contract period, or by the restrictive provision of the contract in the event the contract was terminated by either party before its expiration. We do not believe it can be said with certainty that the parties intended to contract for anything more.

Plaintiff also contends that the court should look to the entire contract to aid it in determining what the parties meant by "termination" in the restrictive paragraph, and should consider the sense in which the words in controversy were used in other parts of the contract. Plaintiff points out two instances in the contract where the word "termination" is apparently used in a broad sense. These relate to the provisions for the return of the leased property to the lessor upon the termination of the lease. It is reasonable to suppose that the parties in these instances intended that the leased property be returned regardless of how the leasing arrangement came to an end. However, as plaintiff concedes, the lease did contain a paragraph providing for the termination of the lease prior to its expiration. This paragraph reads:

"The term of this contract shall be five (5) years from the date hereof; provided, however, that either party may cancel and terminate this contract by giving ninety (90) days notice in writing to the other party, whereupon this contract shall terminate ninety (90) days after the giving of such notice. * * * ”

It seems quite clear that in the paragraph just quoted the word "terminate" is used in the narrow sense, and was intended to mean cancelling or abrogating a contract before its expiration. Thus, in the contract we find instances where at times "termination" is used in a broad sense and at other times, in a restrictive sense. Under the circumstances the contract as a whole lends but little support to plaintiff's contention that the word "termination" in the restrictive paragraph was intended to be used in a broad sense so as to include "expiration."

The court in further support of its interpretation of the restrictive paragraph states:

"In the present case the restrictive paragraph relates to termination 'with or without cause.' It would seem that an agreement which comes to an end by the time limitation contained therein could hardly be said to have been 'terminated' either with or without cause. The use of the words 'in the event' of the termination introduces the element of uncertainty. There is no uncertainty as to the date for the ending of the agreement by the expiration of time that was fixed in the agreement."

■■ The burden is upon the plaintiff, as appellant, to demonstrate that the District Court misconceived or misapplied the Illinois law. Textron, Inc. v. Homes Beautiful, Inc., 8 Cir., 261 F. 2d 646, 651. Plaintiff has failed to meet this burden. We are unable to say that

the trial court either misconceived or misapplied Illinois law. We are satisfied that the conclusion reached by the trial court is a permissible one. The opinion of the trial court reflects that it gave full, careful, and proper consideration to Illinois law.

Judgment affirmed.

WOODROUGH, Circuit Judge, dissents.