## 21185

The PIEDMONT INTERSTATE FAIR ASSOCIATION, Respondent,
v. CITY OF SPARTANBURG, Appellant.

(264 S. E. (2d) 926)

*T. E. Walsh and William E. Walsh of Gaines & Walsh,* Spartanburg, *for appellant.*

*Frank A. Lyles of Lyles, Lyles & Hammett,* Spartanburg, *for respondent.*

April 7, 1980.

WALTER T. Cox, III, Acting Associate Justice.

Appellant, City of Spartanburg, appeals an order interpreting a lease agreement entered into between the City and The Piedmont Interstate Fair Association, Respondent. This declaratory judgment action was commenced by appellant seeking an adjudication as to whether upon the expiration of the term of a lease agreement the assets of the respondent, consisting of cash and land of an approximate value of Four Hundred Thousand ($400,000.00) Dollars, belonged to appellant or to respondent. The lower court found that the

assets held by the respondent would not become property of the appellant upon expiration of the lease. We affirm.

On July 13, 1946, The Piedmont Interstate Fair Association was chartered as an eleemosynary corporation, incorporated according to its charter "in perpetuity" for the purpose "to operate a fair association". For an extensive history of the Fair see *DePass v. Piedmont Interstate Fair Association,* 217 S. C. 38, 59 S. E. (2d) 495 (1950).

On the 4th day of August, 1957, a lease was entered into between the parties wherein respondent leased a tract of land with buildings and appurtenances thereto on the north side of Bishop Street in the City of Spartanburg. The initial term of the lease was for ten (10) years. Through two amendments to the lease, the term was extended until December 31, 1980. The operative terms and conditions of the lease are set out in paragraph 2 of the lease. Subparagraph 2(p) of the lease provides:

The LESSEE further agrees and binds itself, in the event of the termination of this lease on account of the provisions immediately hereinbefore set forth, or for any other reason by act of the LESSOR, to pay all outstanding claims, and reimburse the stockholders for the amount paid into the Association for their shares, provided the funds of the Association are sufficient to do so; and immediately thereafter, turn over to the City, the remaining assets and cash of the Association, to be converted into the General Funds of the City.

Appellant contends that the proper construction of this provision of the lease is that upon the expiration of the lease on December 31, 1980, the assets of the association shall go to the general funds of the city. The court below held that "the expiration of the contract in December, 1980, will not result in a forfeiture of the assets of Piedmont to the City".

We agree.

"The rules of construction * * * relating to contracts generally * * * apply to the construction of a lease. Where the lease is unambiguous and complete, there is generally no room for interpretation or judicial construction; and the provisions of a lease require no construction unless they are inconsistent, conflicting, or are found to be ambiguous." 51C C. J. S. *Landlord and Tenant* Section 232(1), p. 587.

"In construing the effects of a written contract, the intention of the parties and meaning are gathered primarily from the contents of the contract itself, and, when the contract is clear and unequivocal, its contents alone." *White v. White,* 210 S. C. 336, 42 S. E. (2d) 537 (1947); *Dibble v. Dibble,* 248 S. C. 165, 149 S. E. (2d) 355 (1966).

Here, the clear and unequivocal contents of the lease provide that upon termination of the lease, the assets of respondent shall go to appellant. We hold that the use of the word termination in paragraph 2(p) of this lease does not include expiration at the conclusion of its natural term.

The phrase "in the event of termination" contemplates some event which at the time the lease was entered into was not cerain to occur. *Perfection Oil Co. v. Saam,* 264 F. (2d) 835, 839 (8th Cir. 1959). There is no uncertainty as to the date for the expiration of the lease as set forth in original lease and subsequent amendments. The word terminate, employed in connection with a lease, connotes a conclusion and severance of the relationship of landlord and tenant prior to the expiration of the term by the efflux of time. *Weill v. Centralia Service & Oil Co.,* 320 Ill. App. 397, 51 N. E. (2d) 345, 347 (1943). See also, *Kramer v. Amberg,* Com. Pl., 4 N. Y. S. 613 (1889); *Duke's Restaurant Corp. v. Day,* Mun. Ct., 90 N. Y. S. (2d) 16, 19; *Latman v. Kalmor Builders,* Sup., 137 N. Y. S. 249 (1953). "Termination" means to put an end to. *Jazlowiecki v. Nicoletti,* 34 Conn. Sup. 670, 387 A. (2d) 1081, 1082 (1977). Expire, however, means to come

to a close. *Clevenger v. Kern,* 100 Ind. App. 581, 197 N. E. 731, 737 (1935).

The language employed in the lease between appellant and respondent is very clear. The language "'termination on account of the provisions immediately herein set forth" contemplates an event or occurrence by breach of the preceding terms of the lease. The language "or for any other reason by act of the lessor" means the exercise of some legal right of the appellant to bring the agreement to an end prior to its normal expiration. There is no language anywhere in the lease to suggest that the assets of respondent would become the property of appellant upon the natural expiration of the agreement.

This construction of the lease may be had from the four corners of the instrument without resort to any extrinsic evidence. Accordingly, the remaining exceptions taken by the appellant need not be considered. We are of the opinion that the result reached by the trial judge was correct and therefore the order appealed is affirmed.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.